(109 App. Div. 471)

### DUFFY v. NEW YORK EVENING POST CO.

(Supreme Court, Appellate Division, First Department. December 8, 1905.)

LIBEL—PUBLICISTS—CRITICISM—LIBEL PER SE.

Plaintiff alleged that for many years he had been one of the leaders of the Republican Party in New York, had been faithful to the party, was engaged in the contracting business, had made many friends, and was widely and favorably known in political and business circles throughout the city; that defendant published of and concerning him, with reference to his nomination as leader in his assembly district, an article in which he was referred to by a nickname, and stating that he was absolutely devoid of any knowledge of the customs of polite men; that he did well in business, especially during Tammany régimes, devoting his time and energy more to assisting the Tammany leaders than to working for his own nominal party; that it was reported he would soon join Tammany openly; that he cared no more for political principles than he did for the "Silurian age in geology"; and that he engaged in factional fights to the detriment of the Republican Party, and would be a "most unworthy choice." *Held*, that such publication did not transcend the limits of permissible criticism and was not libelous per se.

O'Brien, P. J., dissenting.

Appeal from Special Term, New York County.

Action by James J. Duffy against the New York Evening Post Company. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, CLARKE, and HOUGHTON, JJ.

L. Godkin, for appellant.
J. A. Allen, for respondent.

PATTERSON, J.  This is an appeal from an interlocutory judgment overruling a demurrer to the plaintiff's complaint.  The action is in libel, and the alleged defamatory matter was contained in an article published in a newspaper, to wit, the New York Evening Post.  It is alleged in the complaint, after setting forth that the defendant is a corporation and publishes and circulates a newspaper:

"That the plaintiff is and for many years has been a resident of the borough of Manhattan, in the city of New York; that for many years he has been and is a member and one of the leaders of the Republican Party of the city of New York, to which party and the principles and interests thereof he has always been loyal, faithful, and true, and as such has taken a prominent and active interest in the politics of the city of New York and of the state of New York, and for many years has been and is actively and prominently indentified with political affairs, movements, and issues pertaining to and affecting the city of New York and the state of New York; that he also has for many years been engaged in and carried on a large, extensive, and lucrative contracting business, of which he is and for many years has been a proprietor, and has conducted under his own name in the borough of Manhattan, in the city of New York; that in consequence of his affiliation for a long course of years with the Republican Party, and his active and earnest participation in the affairs and policies thereof, and in numerous political campaigns in the city of New York and in the state of New York, and also in consequence of the ownership and operation of his said contracting business, he has made a large number of friends and acquaintances, and has become, and on the 25th day of August, 1904, was, widely and favorably known, respected, and trusted in social, political, and business circles throughout the city of New York; and on the 25th day of August, 1904, he held, and for many years prior thereto had held, honorable, confidential, and responsible positions in the Republican Party in the city of New York, and was by the leaders thereof highly respected and trusted as a loyal Republican and true to the principles and interests of that party, and was by them intrusted with a substantial part of the management of the party's affairs; and on the 25th day of August, 1904, and for many years prior thereto he has enjoyed the respect, confidence, and esteem of the various persons with whom he had been for many years doing business, especially those persons engaged in the building trades in the city of New York."

He then proceeds to state that:

"On or about the 25th day of August, 1904, in the borough of Manhattan, in the city of New York, the defendant composed, printed, and published in the edition of the said the Evening Post dated August 25, 1904, an article concerning the plaintiff in the following words:

" 'Against Halpin et al.

" 'Thomas J. Clarke Put Up for Leader in the Ninth District.
" 'Circulars are out in the Ninth assembly district urging upon the Republican primary voters "a few words as to who are dictating nominations in this district and managing party affairs," as follows:
" 'William Halpin, temporarily acting as leader, though only of mediocre ability, surpasses the rest, and will be specially characterized later.
" 'John J. Plunkett, formerly bartender for "Mike" Curley on Tenth avenue. Later became janitor and porter of the Local Club. Has a job as deputy sheriff by reappointment of a Tammany administration. Why?
" 'James A. Allen, came into the district with a carpet bag and has acquired property. Always obeys orders. Consult the files of the Evening Post and other reputable newspapers for his record.
" 'Thomas L. Hamilton, personally a nice fellow, but politically a light weight. Charity forbids expatiation.
" 'James J. Duffy, the last and least of all. Known as "Koke" Duffy. Absolutely devoid of any knowledge of the customs of polite men. Does well in business, especially during Tammany régimes. Devotes his time and energy more to assisting the Tammany leaders than to working for his own nominal

party. Is reported to be about to join Tammany openly soon. Apparently knows no more of and cares no more for political principles than he does of the Silurian age in geology. Mixes in Tammany factional fights, to the detriment of the Republican Party. A most unworthy choice.

" 'To vote for the above is to debauch the party. For decency, honesty, and the welfare of Republicanism, vote for Thomas J. Clarke for leader, and Henry Clinton Bachus, W. Henry Godward, and other representative men of principle for county committeemen.' "

It is then alleged in the complaint:

"That the said article was by the defendant unlawfully and maliciously composed, printed, and published concerning the plaintiff as aforesaid on or about the 25th day of August, 1904, in the said edition of the said the Evening Post dated August 25, 1904. That the said edition of the said the Evening Post dated August 25, 1904, containing the said article, was by the defendant on and about the 25th day of August, 1904, widely distributed and circulated throughout the city of New York and other portions of the state of New York. By means of the said distribution and circulation of the said edition of the said the Evening Post dated August 25, 1904, containing the said article, the said article was on and about the 25th day of August, 1904, published and communicated to various readers of the said newspaper. That said article was and is, and the import thereof was and is, false, malicious, defamatory, and libelous concerning the plaintiff. Through the said publication of the said article as aforesaid the plaintiff has been by the defendant exposed to public hatred, contempt, scorn, obloquy, shame and ridicule, and has been thereby greatly injured in his good name and reputation."

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. There is no allegation in the complaint of special damage, and the simple question is whether on the face of the complaint it may be said as matter of law that the alleged defamatory matter relating to the plaintiff is libelous per se, or whether it is necessary that special damage should be pleaded to make it actionable.

It is to be observed at the outset that nothing is said affecting the private character or the business of the plaintiff outside of political relations, and manifestly the case is not within Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810. I am unable to perceive that this article can be said, as matter of law, to hold the plaintiff up to scorn, ridicule, or contempt as an individual or a private person. He does not claim to have been injured as such. He appears only as a public character, and asserts that he has been and is actively and prominently identified with political affairs, movements, and issues; that he held and for many years has held honorable, confidential, and responsible positions in the Republican Party of the city of New York, and was by the leaders thereof highly respected and trusted as a Republican, and was by them intrusted with a substantial part of the management of the party affairs. Standing in that attitude as a public character, his conduct and actions are, of course, open to criticism. To comment upon the acts or conduct of a public man is the right of every citizen. While every one is entitled to the protection of his reputation from slanderous remarks or libelous articles, whether he is a public or private character, yet it appears in this case that the plaintiff was referred to in the article complained of only in the former relation.

A written or printed statement, published of and concerning a per-

son, which is false and tends to injure his reputation, and thereby expose him to public hatred, contempt, scorn, obloquy, or shame, is undoubtedly libelous per se. Triggs v. Sun Print. & Pub. Co., 179 N. Y. 153, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841, and cases cited. But the right of criticism of a public character remains, and must be taken into account when the court is called upon to determine, as matter of law, whether an article which is evidently a criticism of the conduct and career of such a man is libelous per se. An article apparently inoffensive may do great injury to the person concerning whom it is written, and under appropriate allegations in the complaint it would be for a jury to determine whether such article were libelous or not; but where the question is presented, as here, simply upon a demurrer, and starting with the conceded fact that what has been written and published of and concerning the plaintiff by the defendant relates to a public character, the question is whether the court can say upon an inspection of the article that it is libelous per se. Analyzing it, we find that it refers to the plaintiff by a "nickname"; that it states that he is "absolutely devoid of any knowledge of the customs of polite men; does well in business, especially during Tammany régimes." Thus far, there is nothing libelous per se. The article then proceeds to say that the plaintiff "devotes his time and energy more to assisting the Tammany leaders than to working for his own nominal party; is reported to be about to join Tammany openly soon." There is certainly nothing here from which the court can adjudge on an inspection of the article that the words are libelous per se. Taking these allegations together, they cannot be said to be libelous per se, any more than if it were said that a person professing a particular religious belief supports another with the intention of soon becoming a convert to that other faith. The article goes on farther to say that the plaintiff "apparently knows no more of and cares no more for political principles than he does of the Silurian age in geology"; a meaningless phrase which could not have affected the reputation of the plaintiff, although its utterance may have gratified the literary vanity of the writer who composed it. It is also said of the plaintiff that he "mixes in Tammany factional fights, to the detriment of the Republican Party." That might be actionable, if it were shown that his position in the Republican Party were in any way affected by such accusation The article concludes with the statement that the plaintiff is "a most unworthy choice." In commenting upon a public man, it cannot be said that such a remark surpasses the limits of permissible criticism.

The judgment appealed from should be reversed, and the demurrer sustained, with leave to the plaintiff to amend the complaint, on payment of costs in this court and in the court below, within 20 days after the service of an order to be entered upon this decision.

INGRAHAM, CLARKE, and HOUGHTON, JJ., concur. O'BRIEN, P. J., dissents.