Judgment for the plaintiff is directed in the sum of $10,000, with interest thereon, besides costs.

Judgment for plaintiff, with costs.

---

(65 Misc. Rep. 373.)

## LEVEY v. BROOKLYN UNION PUB. CO.

(Supreme Court, Special Term, New York County.  December, 1909.)

1. LIBEL AND SLANDER (§ 6*)—ACTIONABLE WORDS—WORDS IMPUTING DIS-
   HONESTY—"ACCELERATOR."
   The word "accelerator," in its ordinary meaning, is harmless, and as defined by the dictionaries signifies only one who or that which accelerates or hastens; but in the new sense it has acquired a definite and settled signification, and as used in an article designating a man as an accelerator for a trust, it offensively designates him as an agent of certain interests, and one not sincere in his speech.
   [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 3, 4; Dec. Dig. § 6.*]

2. LIBEL AND SLANDER (§ 6*)—WORDS LIBELOUS PER SE.
   The word "accelerator," as applied to plaintiff in a newspaper article, denoting dishonesty, hypocrisy, or double dealing, is libelous per se.
   [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 3, 4; Dec. Dig. § 6.*]

3. LIBEL AND SLANDER (§ 80*)—PLEADING—COMPLAINT.
   A complaint which alleges publication in a newspaper referring to plaintiff as an accelerator, where it appears by the context that the word was used to denote dishonesty or double dealing, a complaint which alleges the publication states a cause of action.
   [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 184–186; Dec. Dig. § 80.*]

Action by Edgar J. Levey against the Brooklyn Union Publishing Company.  Demurrer to complaint overruled.

William F. Clare, for plaintiff.

Jones, McKinney & Steinbrink, for defendant.

DOWLING, J.  The article published in defendant's newspaper concerning the plaintiff, and of which he complains, criticises the position publicly taken by him in a speech before the Chamber of Commerce in opposition to a constitutional amendment exempting subway bonds from computation in the city debt, and which had a bearing directly upon the transportation problem in this city.  It has the caption: "Accelerator Levey's Plea for the Traction Trust."  Throughout the article plaintiff is attacked, and the sincerity of his motives impugned; but the particular cause of grievance, alleged by plaintiff as chiefly objectionable and offensive to him, is his designation as an "accelerator," and this is emphasized by the general tenor of the article, and its comparison of plaintiff with another to whom the same epithet is applied, and whose methods are picturesquely described.

The word "accelerator," in its ordinary meaning, is harmless enough, and, as defined by the Century and Standard Dictionaries, signifies only "one who or that which accelerates; a hastener."  In this limited sense

the word certainly could not be held to be libelous. But by innuendo it is charged that the term was used in a more recent and damaging sense, as describing one who is engaged in a course of intrigue or deceit, and having its rise in testimony given before the Public Service Commission concerning certain methods used in creating an expression of sentiment as to railroad problems in this city. While in this new sense the word "accelerator" has as yet found no added definition in the dictionary, because of the newness of its coining, yet it has acquired a definite and settled signification; and the purpose of the article in question is clearly to offensively designate plaintiff as an agent of certain interests, and as one not sincere in his speech, which is sought to be answered by the editor. How far, then, can the word be held to be libelous?

Deduced from the evidence, which gave vogue to the term and embalmed its meaning, and as charged by the innuendo, and read in connection with the context of the article in question, it may fairly be said that an "accelerator" is one who, while posing as a disinterested citizen, seeking to promote the public welfare by urging the adoption of a particular course of action ostensibly intended to benefit the community in general, is in reality the advocate (paid or voluntary) of private interests, seeking only their own gain. It is clear that, while such an appellation imports no crime of any description under our statutes, yet it is a charge of intellectual dishonesty, of hypocrisy, of double dealing. Plaintiff, at the time of making the utterances in question, occupied no public position, and is not charged with having received compensation to influence any public act. It is the undoubted rule that:

"A written or printed statement or article, published of or concerning another, which is false and tends to injure his reputation, and thereby expose him to public hatred, contempt, scorn, obloquy, or shame, is libelous per se." Triggs v. Sun Printing & Pub. Ass'n, 179 N. Y. 153, 71 N. E. 742 (66 L. R. A. 612, 103 Am. St. Rep. 841).

This rule does not prevent the publication of a mere comment or criticism, even though its consequences may be distasteful to the person criticised. But the extent to which this commentary might go was stated in the same case (page 154 of 179 N. Y., page 742 of 71 N. E. [66 L. R. A. 612, 103 Am. St. Rep. 841]):

"While every one has a right to comment on matters of public interest, so long as one does so fairly, with an honest purpose, and not intemperately and maliciously, although the publication is made to the general public by means of a newspaper, yet what is privileged is criticism, not other defamatory statements, and if a person takes upon himself to allege matters otherwise actionable, he will not be privileged, however honest his motives, if those allegations are not true. When a publisher goes beyond the limits of fair criticism, his language passes into the region of libel, and the question whether those limits have been transcended may become a question of law, but ordinarily presents a question for the jury. * * * If, under the pretext of criticising a literary production or the acts of one occupying a public position, the critic takes an opportunity to attack the author or occupant, he will be liable in an action for libel. Moreover, it is difficult to perceive how this privilege can be tried on demurrer, as the question whether the criticism was fair and just or willfully assailed the reputation of the plaintiff, would be for the jury."

I do not understand that this rule was in any way sought to be limited by the decision in Duffy v. New York Evening Post Co., 109 App.

Div. 471, 96 N. Y. Supp. 629, upon which case defendant's counsel lays much stress. In the latter case an analysis of the language used led the court to hold that it was not libelous. In the present case the libelous matter far transcends the bounds of any decent or legitimate criticism. While any person, assuming to express his views publicly upon a public question, invites controversy, he does not by that act welcome indiscriminate calumny and abuse, to which he must tamely submit as the price for seeking to do a public service. It was held at a very early date that to describe a man as a hypocrite was libelous. Thorley v. Lord Kerry, 4 Taunt. 355. To hold a person up to public scorn and contempt as not only a hypocrite, but as one seeking to deceive and mislead the community to its detriment for the sake of the gain to follow to private interests, and as one willing to resort to specious arguments and dishonest methods to accomplish his end, is not to fairly criticise or answer his statements, even if publicly made, but is to libel him.

Demurrer overruled, with costs, with leave to defendant to answer within 20 days, on payment of said costs.

Demurrer overruled.