Amalgamated Furniture Factories, Inc., Plaintiff, *v.* The Rochester Times-Union, Inc., Defendant.

Supreme Court, Monroe County, February 1, 1927.

Contracts — advertising contract — action to restrain defendant newspaper from refusing to publish plaintiff's advertisements pursuant to contract — plaintiff does not deny defendant's affidavits that advertisements contain untrue matter — defendant warranted in refusing to publish copy containing misleading information — injunction pendente lite denied.

In an action to restrain the defendant, owner of a newspaper, from refusing to publish plaintiff's advertisements pursuant to an advertising contract, an injunction *pendente lite* must be denied, where it appears that defendant's affidavits, which plaintiff does not deny, not only recite that the advertisements already published contain matter which is untrue, but also that copy for the latter advertisements containing plaintiff's name, is deceptive and calculated to mislead in that it produces the impression upon the purchasing public that the merchandise it offers for sale is manufactured in factories owned by the plaintiff when, as a matter of fact, it neither owns factories nor manufactures furniture. The defendant had the right to refuse to publish copy which contains a representation or statement of fact which is untrue, deceptive or misleading. Moreover, plaintiff asks substantially the same relief upon this motion that it seeks in its complaint to restrain the defendant from refusing to publish its advertisements.

43

Supreme Court, February, 1927.          [Vol. 128

MOTION on behalf of the plaintiff brought on by an order directing the defendant to show cause why the defendant should not be enjoined during the' pendency of the action ·from refusing to carry out the terms of an advertising contract.

*George J. Skivington,* for the plaintiff.

*Stephen J. Warren,* for the defendant.

STEPHENS, J. The motion was orally argued January 4, 1927, and a few days later was submitted upon affidavits; the absence of a brief from either counsel has entailed additional labor here, in umpiring the divergent claims of the litigants, each equally insistent upon the strength of its position; no guiding authorities have been cited by counsel and none have been discovered by independent research that has been necessarily limited.

It has been assumed that there was a contract between the parties by the terms of which the plaintiff agreed to pay for space equivalent to 15,000 agate lines in the defendant's newspaper, to be used between May 1, 1926, and May 1, 1927, said space to be used in advertising the plaintiff's business, and that the defendant agreed to publish the plaintiff's advertisements from time to time as the plaintiff should require.

Pursuant to this contract, the defendant published in six different issues between April 27, 1926, and November 10, 1926, both dates inclusive, six of plaintiff's advertisements occupying an aggregate space of 4,045 agate lines, but has refused, although plaintiff demanded that it do so, to publish any· further ones.

The defendant claims to be within its rights in its refusal to furnish the remaining contract space to the plaintiff, on two grounds: (1) That the privilege of approval of the copy of the advertisements was expressly reserved to it in the contract; and (2) that the advertisements already published were untrue and deceptive and the copy for those it declined to publish is of kindred character even if offensive in a lesser degree.

If the rate card were a part of the contract, the defendant cannot refuse to approve copy without a reasonable ground for doing so, and even if it were not part of the contract, it has the right, in my opinion, to refuse to publish copy which contains a representation or statement of fact which is untrue, deceptive or misleading.

The defendant submitted the affidavit of the solicitor of the plaintiff's patronage to the effect that at the time the contract was signed, he and the plaintiff's manager had before them and discussed a printed rate card, so called, which contains the detailed conditions incident to running advertisements, the varying prices dependent upon the character of the business advertised and the

space contracted to be taken, position which the advertisement should occupy in the paper, together with other details; among these several provisions was one bearing upon our present inquiry, " All copy subject to approval;" the plaintiff's manager denies that the rate card having the above-quoted provision in it was ever called to his attention; but that it was at least referred to seems to be established by the form of the written instrument executed by the plaintiff; the quoted provision may not have been the subject of discussion.

Whether or not the rate card was made a part of the contract is not, as above indicated, the only consideration; irrespective of the rate card, the defendant was under no contract obligation to publish untrue statements in its advertising columns; it not only had the right but it was charged with the duty to refuse to give publicity to statements known to be untrue; this is not because, as one of the affiants seems to imply in his affidavit on behalf of the defendant, that it would be a crime to publish such an advertisement; he quotes without labelling the source of the quotation, a brief phrase that occurs in section 421 of the Penal Law, relating to untrue and misleading advertisements; this statute does not brand the newspaper as the misdemeanant but rather the advertiser; the former though cannot be compelled to co-operate knowingly in the commission of a crime however formally binding his contract obligation may appear to be; this is elemental in the law of contracts.

Attached to the plaintiff's moving papers are copies of all of the advertisements that were printed, together with the copy for the other ones which the defendant refused to publish.

The defendant's precise ground for its action seems to be that the plaintiff states in its advertisements, both expressly and in language susceptible to no other interpretation, that it manufactures the furniture which it retails in Rochester, while in fact, as the defendant is informed, the plaintiff owns no factories and makes no furniture.

The plaintiff's place of business is well outside the general business section of the city and its advertisements, in stressing its ability to sell at a price forty per cent below its competitors, contain the statement " 17 Blocks Away from Higher Prices " and more nearly to the point in its publication of April 27, 1926, in reply to the self-propounded question, " How can you afford to sell at such low prices? " it states, among other things, " Our merchandise comes in car lots from the factory." Again, on May 19, 1926, we find in a display advertisement: " 40% Saving on your bill for household goods when they are purchased from the

Supreme Court, February, 1927. [Vol. 128

Amalgamated Furniture Factories, Inc. How Is It Possible? Answer: Our merchandise is shipped to us from our factories and arrives here on a railroad siding right at our door; " and yet again, in the advertisement of May 12, 1926, it stated: " We have the most elaborate daylight display of new and current numbers of furniture, built by our own factories for the furniture market; " this last-mentioned publication is also criticised by the defendant because it is alleged to contain a lottery feature.

The defendant produced affidavits tending to show that the plaintiff had no factories and made no furniture; I do not find in the affidavits submitted on behalf of the plaintiff any specific denial of the defendant's claim in this respect nor any allegation tending to support its published statement that the furniture it offers for sale is the product of its own factories; it is alleged however, " That it is the intention of the plaintiff herein under the powers granted to it under its said charter to enter the manufacturing field and to manufacture furniture and to acquire, own and operate furniture factories; " and again there is the general allegation " That there is no deception in connection with the plaintiff's advertisements or in connection with the use of its name nor was any deception ever intended thereby."

The copy for the later advertisements, however, which defendant refused to publish, did not contain the objectionable statements before mentioned; the defendant seeks to justify its refusal to publish them on the ground that the name alone of the plaintiff is deceptive and calculated to mislead; that it inevitably suggests a merger of furniture factories and produces the impression upon the purchasing public that the merchandise it offers for sale is produced by its combined or amalgamated factories, quite as strongly as the direct statements before quoted; and further, that to publish the plaintiff's advertisements in the later form would be an indorsement of those earlier published.

The plaintiff asks substantially the same relief upon this motion that it demands in the complaint; if the relief be not granted, it is urged that the plaintiff will be remediless, for the period within which the advertising service is to be rendered will have expired before the action can be determined upon common-law proof; by the same token, if the motion be granted, the defendant will be deprived of any benefit of such a determination; in either case, the *status quo* will not be preserved, and the object which the desired order is designed to secure is defeated.

The plaintiff has not presented a sufficiently strong appeal for this antecedent remedy; it may be able upon the trial to establish its rights to publish its advertisements; if so, it will probably be

entitled to damages against the defendant for its refusal to publish them when the plaintiff requested that it do so; the damages may be difficult to ascertain but there is doubtless some basis upon which they can be computed approximately " upon reasonable conjecture and probable estimates." (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205.)

The circumstance that this decision goes only to the questions arising upon the motion for an injunction order, designed to secure a remedy substantially identical with that demanded in the complaint, has led to a discussion bearing to some extent upon the merits of the controversy; this discussion, however, can in no measure control the trial court nor is it even intended to be advisory; it is limited to the present purpose of inquiry into the plaintiff's right to a preliminary mandatory injunction.

The plaintiff, in its moving papers, ascribes motives to the defendant, founded upon conversations alleged to have been had between its manager and representatives of the defendant; the latter denied the statements attributed to them; if they acted solely upon the grounds that the plaintiff alleges, it may well be that the refusal to publish the advertisements was unreasonable; on the other hand, if the defendant had a legal right to refuse, any other motive, even if malicious, which is not claimed here, is negligible. (*Kiff* v. *Youmans*, 86 N. Y. 324; *Beardsley* v. *Kilmer*, 236 id. 80; *Locker* v. *American Tobacco Co.*, 121 App. Div. 443; affd., 195 N. Y. 565.)

It follows from the foregoing considerations that the motion should be denied; the motion is denied, with ten dollars costs to the defendant to abide the event; an order in accordance herewith may be submitted for signature.