CHURCHILL EVANGELISTIC ASSOCIATION, INC., Appellant, *v.* COLUMBIA BROADCASTING SYSTEM, INC., and Another, Respondents.*

Fourth Department, November 16, 1932.

*Charles Diebold, Jr., Edward L. Jung* and *Ralph K. Robertson,* for the appellant.

*Louis L. Babcock, Harold S. Brown, Ralph F. Colin* and *Sidney M. Kaye,* for the respondent Columbia Broadcasting System, Inc.

*Lyman M. Bass* and *William P. Stewart,* for the respondent Buffalo Broadcasting Corporation.

EDGCOMB, J. This is an action for specific performance. Plaintiff claims that the defendant Columbia Broadcasting System is bound by contract to broadcast over its network a religious program, known as the "Back Home Hour," every Sunday evening until November 30, 1932. This program, consisting of a sermon, prayer and music, both instrumental and vocal, and which emanated from plaintiff's tabernacle on Main street in the city of Buffalo, was first put on the air over the Columbia chain on October 13, 1929, and was continued each Sunday evening until April 19, 1931, when it was given up. Insisting that this cessation was without legal right, plaintiff asks that the Columbia Broadcasting System be forced to resume the broadcast of said program

---

* Affg. 142 Misc. 210.

for a period equal to that from April 19, 1931, to November 30, 1932. The complaint has been dismissed on the merits, and plaintiff appeals.

From the date of its incorporation in 1924, the religious work of the appellant has been in charge of Clinton H. Churchill, an ordained minister of the Methodist Episcopal church. Mr. Churchill was quick to see the vast possibilities of the radio in religious work, and in 1925 he began to broadcast his services over WMAK, one of the radio stations in Buffalo. About a year later Mr. Churchill and his associates, Mr. Kittinger and Mr. Deyo, erected a radio station of their own, known as WKBW, which they used exclusively for religious and educational purposes.

WKBW was a full time station, but in order to retain all its time it was obliged, under the regulations of the Federal Radio Commission, to operate sixteen hours each day in the week. Finding it difficult to utilize its full time for religious broadcasts, Messrs. Churchill, Kittinger and Deyo organized, in May, 1928, the Buffalo Broadcasting Corporation for the purpose of taking over station WKBW, so as to permit its use for commercial purposes, when it was not needed for the work of the association.

The Buffalo Broadcasting Company not only leased from the plaintiff station WKBW, but it acquired all the stock of three competing stations, WMAK, WKEN and WGR, and thereby gained control of the four principal radio stations in Buffalo.

Plaintiff and the Buffalo Broadcasting Corporation entered into various leases and agreements relating to station WKBW, some five in number, between June 25, 1928, and May 8, 1931, in all of which appellant reserved to itself the use of said station for the whole, or a portion of each Sunday. On May 8, 1931, the parties made an agreement in which the former leases and contracts were canceled, and by the terms of which the Churchill Evangelistic Association sold to the Buffalo Broadcasting Corporation station WKBW, including ten acres of the Kittinger farm, on which the station had been erected, and the buildings, machinery and equipment located thereon, and the equipment located at plaintiff's tabernacle in the city of Buffalo, reserving, however, the exclusive use and disposition of the period on Sundays from six A. M. to one-thirty P. M., and from seven P. M. to ten P. M., and from eleven P. M. Sunday evening to six A. M. Monday morning. Plaintiff was anxious to put its Sunday services on the air, and to continue to reach the public by means of the radio, and consequently insisted on this reservation. In the first lease the plaintiff had retained for itself the exclusive use of station WKBW for the entire twenty-

four hours from six A. M. Sunday to six A. M. Monday, but in the lease of September 19, 1930, it surrendered its right to the use of the time from one-thirty P. M. to seven P. M., and this provision was carried over into the agreement of May 8, 1931, the one in effect at the time of the trial. This was a valuable concession. The rate card of the Buffalo Broadcasting Corporation, effective June 1, 1931, shows the nighttime rate of station WKBW to be $275 per hour, and the daytime rate to be half that sum. The hours between noon and midnight on Sunday are considered as nighttime.

In consideration of the release by the plaintiff of this Sunday time from one-thirty P. M. to seven P. M. and from ten P. M. to eleven P. M., the agreement of May 8, 1931, provided that the association should have the right to continue chain broadcasting on Sundays as then conducted by it under the title " Back Home Hour " over the so-called Columbia Broadcasting Chain until November 30, 1932, and that the Buffalo Broadcasting Corporation would pay all expenses connected therewith, including line charges, instrumental and vocal musical talent, etc. The agreement also provided that the Buffalo Broadcasting Corporation would pay to the plaintiff $600 for each week, up to and including August 31, 1931, that the Columbia Broadcasting System should fail to put this program on the air over its national chain, if for any reason such an event occurred. It must be borne in mind that this agreement was between the Churchill Evangelistic Association and the Buffalo Broadcasting Corporation, and that the Columbia Broadcasting System was not a party thereto.

On November 23, 1928, the United Independent Broadcasters, Inc., the predecessor of the Columbia Broadcasting System, entered into a contract with the WMAK Broadcasting System, Inc., which gave to the United Independent Broadcasters " the facilities of station WMAK or an affiliated station in the Buffalo territory, satisfactory to the Broadcaster," for fourteen hours each week. The agreement ran for one year from December 1, 1928, with a privilege to the lessee to renew it twice for additional periods of one year each. On September 18, 1929, this contract was extended for one year from December 1, 1929, and in the following February it was again extended for an additional two years, so that it ran until November 30, 1932.

In February, 1929, the Columbia Broadcasting System opened negotiations for the acquisition of station WKBW for its Buffalo outlet in the place of WMAK, which, by a reallocation of wave lengths by the Federal Radio Commission, had been put on part time. WKBW had retained its full time, and its power had been

increased from 1,000 to 5,000 watts, and it had become the most desirable station in Buffalo. On February 6, 1929, a conversation was had between Mr. Weinberger, representing Columbia, and Mr. Churchill, representing Buffalo, upon this subject. Mr. Churchill stated that, if he could be assured that he would be accorded the privilege of broadcasting an hour's religious program over the Columbia network on each Sunday, he thought that he could arrange to give Columbia the use of WKBW as its outlet, and that the plaintiff, which owned most of the Sunday time on that station, would probably release enough of its time to make the arrangement possible. No agreement was reached on this occasion. It was simply a preliminary talk. On the eleventh of the same month Messrs. Churchill and Kittinger went to New York and took up the matter with Mr. Paley, the president of Columbia. The arrangements which were there made were not embodied in any written contract, but were later confirmed by letters which passed between Mr. Churchill and Mr. Paley. That Mr. Churchill was representing the Buffalo Broadcasting Corporation in these negotiations cannot be doubted from the form of the correspondence. Columbia was given the call on all commercial programs which it sold for Buffalo coverage on the best station of the Buffalo Broadcasting Corporation, which, as expressed by Mr. Paley, " according to plans now, will be WKBW."

To make this arrangement possible, the plaintiff was compelled to give up its right to the use of this station for the larger part of each Sunday, which, according to the rates charged for commercial advertising, was a valuable right. Mr. Churchill felt, and very properly so, that, if the association surrendered its Sunday time for the profit and advantage of the Columbia Broadcasting System, the least that Columbia could do in return was to give the association one hour of its time for a religious program from eleven to twelve P. M., one of the least valuable hours during the day for commercial broadcasting. There is much to be said in favor of plaintiff's claim, but it cannot succeed here unless its rights are fixed by some binding agreement. While the broadcast of this program was frequently mentioned and discussed, too much was taken for granted, and the talk never ripened into a legal agreement which can be enforced in this action against the Columbia Broadcasting System.

In the talk between Mr. Paley and Mr. Churchill in New York it is not claimed that any agreement was reached by which this program was to be put on the air for any definite period. Mr. Churchill testified " that the whole arrangement was to be on a trial basis."

The correspondence which followed Mr. Churchill's return to Buffalo distinctly states that Columbia could discontinue the broadcast at any time, if the best interests of the company demanded such action on its part. Mr. Churchill reserved the same privilege.

It is apparent that up to this time, at least, the arrangements for the broadcast of the " Back Home Hour " were loose and elastic. It was to be a tryout, and could be discontinued whenever either party saw fit.

In January, 1930, a misunderstanding arose between Mr. Churchill and Mr. Kittinger, and the former consented to resign from the Buffalo Broadcasting Corporation. Before doing so, however, Mr. Churchill went to New York and had an interview with Mr. Paley concerning the further broadcast of the " Back Home Hour," and an extension of Columbia's contract with the Buffalo Broadcasting Corporation, which, it will be remembered, ran for one year with an option for extension. Nothing definite was agreed upon in this interview. Mr. Churchill was to go home and report to his associates, and letters were to follow. Correspondence did pass between the parties, but it pertained to an extension of the contract between Columbia and Buffalo, and not to a continuance of the broadcast of the " Back Home Hour."

The contract upon which plaintiff relies is specified in the complaint and the bill of particulars. In the complaint it is asserted that, as a part of the consideration for granting the exclusive right to the Columbia Broadcasting System to broadcast its chain programs over WKBW, Columbia " was required to broadcast plaintiff's religious services known as the ' Back Home Hour ' over its chain each Sunday evening during the term of the contract between said defendants, and that said defendant, Columbia Broadcasting System, Inc., accepted said provision for said ' Back Home Hour ' and agreed to the same for the period from October 13, 1929, to November 30, 1930," and that the contract was renewed for two years from November 30, 1930, to November 30, 1932. In its bill of particulars plaintiff states that this agreement is set forth in the contract of May 8, 1931, made between the plaintiff and the Buffalo Broadcasting Corporation, " and the surrounding facts and circumstances are explained by conversations had during the week of February 11, 1929, at New York city on behalf of the defendant, Columbia Broadcasting System, Inc., by William S. Paley, president of said defendant.'

The contract of May 8, 1931, to which reference has already been had, is not ambiguous; it does not require any parol evidence to explain or clarify its provisions. The agreement speaks for itself, and the court has no right to change its terms, or to make a

new or different contract for the parties. (*Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125, 133; *Dwight* v. *Germania Life Ins. Co.*, 103 id. 341.)

While this agreement does give to the plaintiff the right to broadcast its " Back Home Hour " over the Columbia network until November 30, 1932, that contract was made by the Buffalo and not the Columbia Broadcasting Company. So far as the record shows, Buffalo had no authority to speak for or to bind Columbia. There is no evidence that Columbia ever knew that this agreement of May 8, 1931, was in existence.

But if we could revert to the conversation which took place between Mr. Churchill and Mr. Paley in New York in February, 1929, we would find no agreement to broadcast this program for any definite period. Columbia in all these negotiations insisted that the broadcast of this hour could be discontinued at any time it desired.

Where no definite period of service is specified in a contract, the continuation of the service is at will, and may be discontinued at any time. (*Watson* v. *Gugino*, 204 N. Y. 535, 541; *Martin* v. *New York Life Ins. Co.*, 148 id. 117, 121.)

I find no contract here which was ever made between plaintiff and the Columbia Broadcasting System. But if it could be said that, by reason of the relation which existed between the plaintiff and the Buffalo Broadcasting Corporation, any agreement which the latter corporation made with Columbia was made for the benefit of the plaintiff, and inured to its advantage, and could be enforced by it, we are still met with the fact that the Columbia Broadcasting System never made an agreement with any one to broadcast this program for any definite period. It always insisted that the broadcast could be discontinued at any time it saw fit. The extension by the Buffalo Broadcasting Corporation on February 24, 1930, of Columbia's " existing contract * * * expiring November 30, 1930," until November 30, 1932, did not change the terms of the contract of May 8, 1931, nor did it create any new rights or obligations.

So far as the Buffalo Broadcasting Corporation is concerned, it was made a party defendant because it refused to join with the plaintiff in bringing this action against the Columbia Broadcasting System. While the Buffalo corporation could be compelled to allow the plaintiff to broadcast from station WKBW, it could not make Columbia take and transmit over its chain the program from WKBW. Concededly, Buffalo has breached its contract with plaintiff, but the remedy for that breach is fixed in the agreement, and Buffalo has paid and plaintiff has accepted the amount agreed

upon as the sum to be paid plaintiff if the broadcast of its religious hour was not had as specified in the contract. Plaintiff is entitled to no equitable relief against the Buffalo corporation.

I think that the Special Term reached the correct conclusion, and that the judgment should be affirmed.

All concur.

Judgment affirmed, with costs.