ANGELO A. ROSE, Plaintiff, *v.* GORDON P. BROWN, Doing Business as WSAY RADIO STATION, et al., Defendants.

Supreme Court, Special Term, Monroe County, October 27, 1945.

554

*Alexander I. Tomanovich* for plaintiff.

*Jacob Ark* for H. M. Evans and another, defendants.

VAN VOORHIS, J. Plaintiff alleges that on October 18, 1945, he entered into a contract with the radio broadcasting station WSAY whereby in consideration of $112 it agreed to transmit two fifteen-minute political broadcasts on the afternoons of Sunday, October 28th, and Sunday, November 4, 1945. The contract contained the following provision: " Copy of talks must be submitted to WSAY at least three days prior to broadcast dates. All material subject to approval of station manager." On October 25th, plaintiff submitted to this station the script for his proposed October 28th broadcast. The following day, on October 26th, plaintiff Rose was informed on the telephone by Harland M. Evans on behalf of the station according to Rose's affidavit " that because of the fact plaintiff did not represent a legal party electing candidates that the defendants would have to cancel the broadcast." Concerning this conversation Evans' affidavit states that he told Rose " that the script was not acceptable; that it was not a legal political party, supported no candidate for office, and that he wanted to give him the money back which was left together with the script the day before." It thus appears that both affidavits are in substantial accord that the reason assigned by the station for refusing to make this broadcast was that the " Labor and Liberal Committee " for

which plaintiff acted was not a regular political party and that the script submitted supported no candidate for office.

The plaintiff is applying for a temporary injunction on account of the time element due to the circumstance that by the time when the action becomes at issue and is brought to trial the dates set for these broadcasts will have long since gone by, and the issue will have become academic.

It is assumed for the purpose of this motion that except insofar as it shall bind itself by contract a radio broadcasting station has the right to select what programs it will transmit and may reject such as it chooses provided only that the Federal Communications Act (Act, § 315; U. S. Code, tit. 47, § 315) respecting broadcasts by candidates for public office be not violated (*Sta-Shine Products Co.* v. *Station WGBB*, 188 I. C. C. 271; *Summit Hotel Co.* v. *National Broadc'st'g Co., Aplnt.*, 336 Pa. 182; Dill on Radio Law, pp. 104–105).

In this case there is a contract with WSAY in force signed "Labor and Liberal Committee by Angelo A. Rose Responsible Individual or Agency", the consideration for which has been paid, requiring the station to make the broadcast on condition that the material to be transmitted is approved by the station manager. Plaintiff contends that this clause in the contract did not give to the station an arbitrary right to cancel the contract, that if the station did not want to allot radio time to others than legally constituted political parties that was something on which it should have made up its mind before signing the contract, that by placing its rejection upon this ground alone the station has waived the right to object to the script in other respects, and that it is in reality using that clause in the contract as a pretext for the cancellation of a contract which it now regrets having made. WSAY has contended upon the argument of the motion that the material for the proposed broadcast may be slanderous and is unsuitable.

Mandatory injunctions compelling specific performance of radio broadcasting contracts will be granted where the circumstances warrant (*Churchill Evangelistic Assn., Inc.,* v. *Columbia B. S., Inc.,* 142 Misc. 210, affd. 236 App. Div. 624). Mandatory injunctions will be granted *pendente lite* where irreparable injury will otherwise result to the claimant (7 Carmody on New York Pleading and Practice, § 183; *Bachman* v. *Harrington,* 184 N. Y. 458). The situation is somewhat analogous to compelling a newspaper to insert advertisements for which space has been contracted (*Humphreys Mfg. Co.* v. *Williams Co.,* 70 Misc. 354).

The disposition of the merits of the controversy depends upon the effect which is to be given to the clause in the contract " All material subject to approval of station manager." A somewhat similar question arose in *Amalgamated F. F., Inc.*, v. *Rochester Times-Union, Inc.* (128 Misc. 673, 674), which was a motion on order to show cause why the defendant should not be required to carry out the terms of an advertising contract. In the contract the newspaper had reserved the privilege of approval of the copy of the advertisements. In the course of his opinion, Justice Stephens stated that " the defendant cannot refuse to approve copy without a reasonable ground for doing so ". He denied an injunction in that case upon the ground that the defendant's refusal to approve the copy furnished was reasonable in that in certain specified particulars previous advertisements under the same contract had proven to have been untruthful.

It is the conclusion of this court that under the contract in suit station WSAY could not utilize its privilege of approval of copy for the broadcast arbitrarily in order to cancel the contract. If it rejected plaintiff's script, it was obliged to have a reasonable basis for doing so and to inform plaintiff thereof. The fact that the " Labor and Liberal Committee ", for which plaintiff acted, was not a duly constituted political party did not furnish a reasonable basis on which to reject the script, not to mention on which to cancel the contract. The copy for the broadcast, which has been annexed to the answering affidavits, indicates that the broadcast is political in nature, but the defendants knew that the type of program was to be political because it is so stated in the contract. If WSAY did not wish to contract for that type of program with Mr. Rose on behalf of this group, which the defendants should have known was not a political party since that was a matter of public record, the station should not have entered into such a contractual obligation. Upon the argument, as has been stated, counsel contended that portions of the proposed broadcast were of such nature as perhaps to open the broadcasting station to suits for libel or slander. Such an objection, if substantiated, would, of course, be a sufficient ground on which to reject the copy for the broadcast, although plaintiff should have been informed of the respects in which it is claimed that the broadcast might be construed to be libelous or slanderous. That would appear to be one object of the provision in the contract requiring a copy of talks to be submitted three days prior to broadcast dates, in order that defects of that nature might be corrected if possible. Oppor-

tunity should have been given to plaintiff to do that if the script was subject to such a criticism. In such event a proposed broadcast could be modified or the station supplied with evidence of the truth of any possibly slanderous assertions. A difficulty with defendants' position is that WSAY called Rose's attention to nothing that was wrong in the script but cancelled the whole contract, and called upon plaintiff to take back the $112 which he had paid for both broadcasts. How defendants could have known that the material for the second Sunday's broadcast would be unsatisfactory before receiving it, does not appear.

The court is nevertheless of opinion that the station should not be compelled to transmit this Sunday's program if any part of it could reasonably be construed as opening the door to suits against it for slander or libel. In considering that phase of the case it is necessary to remember that to comment upon the acts or conduct of a public man is the right of every citizen (*Duffy* v. *New York Evening Post Co.*, 109 App. Div. 471), that fair comment is permitted upon facts truly stated on matters of public interest and concern (*Foley* v. *Press Publishing Co.*, 226 App. Div. 535) and that published conclusions drawn from facts, in order to escape being actionable, need not be the necessary conclusions from such facts. It is sufficient if the facts form a reasonable basis for such conclusions and the comments and criticism connected therewith (*Howarth* v. *Barlow*, 113 App. Div. 510; *Cortright* v. *Anderson*, 208 App. Div. 1).

Tested by these standards, it does not appear to the court that the proposed broadcast is libelous or slanderous per se. The defendants have presented nothing to indicate that it is actionable by reason of extrinsic facts. Where adverse characterizations are drawn respecting individuals who are either in public positions, running for public office or engaged in activities claimed to be tinged with a public interest, these characterizations or conclusions are set forth as being drawn by Mr. Rose honestly from facts stated. They are not the only conclusions which can be drawn, but it seems that he is entitled to draw them under the rule above stated without involving the station in liability if it publishes them. Whether it is good policy for the station to transmit a political broadcast from that source is something it ought to have considered before entering into the contract.

A point which has given the court some concern is the circumstance that the summons and complaint and order to show cause have not been delivered to the defendant Gordon P. Brown

personally, who is the owner of the radio station. Defendants Evans and Walz are managing agents of the station. Both of them have been served with the papers. If the radio station were the property of a corporation, service upon a managing agent would be adequate (Civ. Prac. Act, § 228, subd. 8). In order to render a temporary injunction effectual, it is not necessary that the summons and complaint shall have been served upon the defendant. It is enough if they are presented to the court (*Daly* v. *Amberg et al.,* 126 N. Y. 490). The order to show cause why a temporary injunction should not issue is required to have been served upon the defendant Brown. However rule 60 of the Rules of Civil Practice provides that the court or judge signing the show cause order is authorized to. direct '' when and how the same shall be served.'' In Carmody on New York Pleading and Practice (Vol. 1, § 369), it is stated: '' The method of service directed would probably ordinarily follow the method prescribed by rule for the service of papers generally * * *. But the order to show cause may prescribe service by mail in accordance with the rule providing therefor, if such service is necessary or desirable. And it may, in an exceptional case, specify a particular method of service.'' In this instance the order stated: '' Sufficient cause appearing therefor, let service of a copy of this order upon the defendants or either of them on or before October 26th, 1945, be deemed sufficient.'' Inasmuch as the defendant Brown, as alleged in the complaint, is the owner and operator of the station and therefore indispensable as a defendant without whose presence in the action no relief could be granted against either of the other defendants, the provision in the order that service upon either of the defendants be deemed sufficient must be regarded as being intended to provide for service upon Brown by serving either of his two managing agents at the station. Brown himself, as appears from the affidavits, is in New York City. Plaintiff, if he acted at all, was required to obtain and serve his order to show cause on October 26th. That speed was necessary if he were not to allow the broadcast of Sunday, October 28th, to go by default. While a court or judge in providing for the method of service of an order to show cause is not limited to the provisions of the Civil Practice Act respecting the service of a summons, an analogy exists in this instance to the practice prescribed by section 230 of the Civil Practice Act for an order for substituted service of a summons. Substituted service is thereby authorized '' upon satisfactory proof that the plaintiff has been or will be unable, with due diligence, to make personal

service of the summons within the state.'' Section 231 provides that where other prescribed methods of making substituted service are impracticable, '' service of the summons may be made in such manner as the court may direct.'' Substituted service of an order to show cause was allowed in *Jackson* v. *Stiles* (2 Caines 368; see, also, *Catholic Women's Benevolent Legion* v. *Burke,* 253 App. Div. 261). Under these circumstances and due especially to the circumstance that the first oppor-' tunity which plaintiff could have had to act was on October 26th, when he was informed of the cancellation of his contract, and that the time schedule required that he have the papers prepared and served upon that date, it appears to the court that the provision in the show cause order making service on either of his managing agents sufficient was reasonable and proper. Defendants Evans and Walz appeared by the attorney for the station who indorsed the answering affidavits submitted as '' attorney for defendants '' but stated at the opening of court upon the argument that he appeared for the other defendants only and not for Mr. Brown. If the plaintiff had been required to reach Brown in New York City, his rights would have been lost. Under these circumstances it is held that defendant Brown is before the court in these proceedings.

Plaintiff signed the contract, as has been stated, on behalf of '' Labor and Liberal Committee '', an unincorporated association, and it would have been better practice if his complaint had stated in the title that he commenced the action in its behalf. Nevertheless, section 12 of the General Associations Law specifies that an action or special proceeding may be maintained by the president or treasurer of an unincorporated association upon any cause of action which could be maintained by all of the associates. That section evidently contemplates that such actions shall be brought in the name of the individual who is president or treasurer, and so long as it appears from the body of the papers submitted, as it does in this instance, that the action is brought in the interest of the unincorporated association, it is not deemed to be a fatal defect that the association is not referred to in the title of the action. In the contract Rose is described as the '' responsible individual or agency '' for this committee, and it was he who acted as treasurer in paying the money to the station. It is held that the action is properly brought under the General Associations Law.

The prayer of the plaintiff for a temporary mandatory injunction to deliver this talk in accordance with his contract with the radio station is granted.